## A05A0289. JACKSON v. THE STATE.
(619 SE2d 294)

SMITH, Presiding Judge.

Melvin Delano Jackson was convicted by a jury of enticing a child for indecent purposes, aggravated child molestation, and statutory rape. His amended motion for new trial was denied, and Jackson appeals. Because the State did not present sufficient evidence of aggravated child molestation, that conviction must be reversed. For the reasons that follow, however, the trial court did not err in denying Jackson's motion for new trial with respect to the remaining convictions.

1. We first address Jackson's contentions that the evidence was insufficient to support the verdict. Construed in favor of the verdict, the State presented evidence that Jackson is the victim's half brother. At the time of trial, February 2001, the victim was 14 years old. Approximately two years earlier, on January 16, 1999, Jackson came to the victim's home to attend a birthday party for one of the victim's sisters. At Jackson's request, the victim left the residence to go with him to the grocery store. Before going to the store, however, they went to Jackson's apartment. The victim sat down in Jackson's living room. A short time later, Jackson picked her up and took her to his bedroom. The victim testified that he laid her on the bed, pulled down her pants, stockings, and underwear, and "[h]e stick his thing in me." She told him to stop, and she tried to "fight back." He also placed his mouth on her breasts. They left the apartment, went to the grocery store, McDonald's, and a convenience store, and they returned to the victim's home.

(a) The State concedes that the evidence was insufficient to convict Jackson of aggravated child molestation. Indeed, although the victim testified that Jackson placed his mouth on her breasts, no evidence was presented that he placed his mouth on her vagina, as alleged in the indictment. The conviction for aggravated child molestation must therefore be reversed.

(b) With respect to the statutory rape conviction, Jackson argues that the State did not prove the victim's age. This contention is belied by the record. An investigator testified that he believed the victim was 12 years old at the time of the incident. In addition, the victim testified before the jury that she was 14 years old at the time of trial. The incident occurred approximately two years before trial, in January 1999. It is beyond argument that ample evidence existed on which the jury could conclude that the victim was under the age of 16 at the time of the incident, as required by the statutory rape statute, OCGA § 16-6-3 (a).

Jackson also argues that the victim's testimony was not corroborated and therefore that the evidence was insufficient to support the statutory rape verdict. Under OCGA § 16-6-3 (a), conviction of statutory rape requires corroboration of the victim's testimony. But

> the quantum of corroboration needed is not that which is in itself sufficient to convict the accused, but only that amount of independent evidence which tends to prove that the incident occurred as alleged. Slight circumstances may be sufficient corroboration and ultimately the question of corroboration is one for the jury.

(Citation and footnote omitted.) *Weldon v. State*, 270 Ga. App. 262, 264 (2) (606 SE2d 329) (2004). The victim's sister testified that the victim told her that Jackson had "felt on her breasts and her butt and her vagina and that he . . . put her on the bed and tried to put his penis inside her." The physician who examined the victim found no bruising, bleeding, secretions, or infections, but he did determine that the victim's hymen was not intact. Although slight, "[t]aken as a whole," we conclude that the "evidence was sufficient to corroborate the victim's testimony." *Simpson v. State*, 234 Ga. App. 729, 731 (2) (507 SE2d 860) (1998) (victim told other witnesses that defendant had sexually abused her and physician testified that victim's hymen was not intact).

(c) The indictment in this case charged Jackson with enticing the victim for indecent purposes by taking her to his apartment for the purpose of child molestation. Jackson argues that his conviction for this offense must be reversed, on the ground that he was not charged with the underlying offense of child molestation. He contends that he

"was convicted of the indicted offense, when he was not found guilty of the underlying offense which provides the foundation for the conviction." But the State was not required to charge Jackson with child molestation in order to obtain a conviction of enticing a child for indecent purposes, as those are two separate crimes involving different elements, and generally, enticement is completed before child molestation occurs. See generally *Leon v. State*, 237 Ga. App. 99, 107-108 (5) (513 SE2d 227) (1999); *Lasseter v. State*, 197 Ga. App. 498, 499-500 (399 SE2d 85) (1990). Furthermore, sufficient facts were included in the indictment to place Jackson on notice that he was charged with enticing the victim to his home in order to commit the act of child molestation. See generally *Fraley v. State*, 256 Ga. 178, 179 (2) (345 SE2d 590) (1986), overruled on other grounds, *Mallory v. State*, 261 Ga. 625, 630 (5) (409 SE2d 839) (1991). Evidence was presented that Jackson took the victim to his home for the purpose of child molestation, as he requested that she leave her own home with him, took her to his home, physically carried her to his bedroom, and, among other acts he committed, placed his mouth on her breasts.

2. Jackson argues that the trial court erred in admitting certain statements into evidence. We note initially that

> [i]n ruling on the admissibility of an in-custody statement, a trial court must determine whether, based upon the totality of the circumstances, a preponderance of the evidence demonstrates that the statement was made freely and voluntarily. Unless clearly erroneous, a trial court's findings as to factual determinations and credibility relating to the admissibility of the defendant's statement at a *Jackson v. Denno* hearing will be upheld on appeal.

(Citation omitted.) *Folson v. State*, 278 Ga. 690, 692 (2) (606 SE2d 262) (2004).

Investigator Lee Woods, who was employed by the Richmond County Sheriff's Office, testified concerning an interview he conducted with Jackson. Woods acknowledged generally that before speaking with Jackson, he "read him his rights." He explained that as he was obtaining personal information from Jackson, he "began telling me a story about what had happened between" the victim and himself. Jackson admitted to Woods that he and the victim left the birthday party in order to get some items needed by the family. He told Woods that they stopped by his apartment to pick up an overdue movie, where the victim began crying and "talking about rejection of the family." According to Woods, Jackson stated that he tried to comfort the victim and that "she tried to kiss him on the mouth." Jackson told Woods that he pushed the victim away and then left the

apartment, went to the grocery store, went to McDonald's where he bought the victim some food, and took the victim home.

According to Woods, Jackson made these statements before Woods

> even had the opportunity to even ask him a question. I was simply sitting there making some notes and talking to him, and I didn't ask him anything in particular so I stopped and at that point told him that I had some questions that I wanted to ask him specifically about the incident and I read him his rights and his *Miranda*.

He testified that Jackson then signed a waiver of rights form, and that waiver was admitted into evidence without objection. The waiver indicated, among other things, that Jackson had been informed of his rights "prior to being questioned by" law enforcement officers.

After Jackson signed the waiver, Woods asked more questions of him and "began going over what he had told me in the first part of the conversation." Among other things, Jackson repeated his story that he had taken the victim to his apartment and had tried to comfort her when he noticed her crying. According to Woods, Jackson "again repeated that she at that time tried to kiss him while he was comforting her," and Jackson "indicated" his feeling that the victim "had accused him falsely." Woods testified that Jackson did not appear to be under the influence of alcohol or drugs or otherwise impaired when he signed the waiver, that Jackson was not threatened or coerced into signing the waiver, and that Jackson "understood perfectly" the English language.

Even assuming, without deciding, that Jackson's *Miranda* rights were administered and the waiver form executed only midway through the interview and after Jackson had described his involvement with the victim, we find no reversible error. Evidence was presented that he freely and voluntarily signed the waiver form, after which he again described his contact with the victim. Even if the statements made before Jackson signed the waiver were inadmissible, "any error associated with the admission of the statement at trial was harmless because it was cumulative of other evidence that was admitted properly." (Citation and footnote omitted.) *Hardin v. State*, 269 Ga. 1, 4 (2) (b) (494 SE2d 647) (1998).

3. Jackson contends that similar transaction evidence was improperly admitted. The State presented evidence that in July 1998, Jackson asked the mother of the similar transaction victim if he could take the 11-year-old victim to a birthday party. Jackson was the mother's former boyfriend. The mother agreed, but instead of going to any birthday party, Jackson took the victim to his sister's apartment,

carried her to his bedroom, and told her to take off her clothes. She testified that when she did not comply with Jackson's instruction, he "started forcing me to take off my clothes." She stated that "[h]e laid me down on the bed and started licking my vagina." The victim told Jackson "to stop and then I slapped him." Jackson told her "something like he was going to shoot me if I didn't let him do it. And then I got scared. But then he said he was just playing, but I was still scared." He also told the victim that he would "give me some money if I would let him lick my vagina like he wanted to." He gave her a popsicle, and returned her to her mother. He told the mother that the birthday party had been cancelled.

The trial court fully charged the jury on the limited purposes for which it should consider the similar transaction. As pointed out by the State in its appellate brief, in each case Jackson "obtained permission from the mothers of girls he knew well to take the girls for a specific purpose, diverted to [an] apartment, carried the girls to his bedroom, partially disrobed them, attempted to or did perform various sex acts, gave them a food treat, then returned them to their mothers" with a fictitious explanation.

Jackson does not argue that the two incidents are dissimilar. Instead, he claims that the evidence was insufficient to show that he was the perpetrator of the prior transaction, on the ground that DNA evidence "cleared" him of any charge. DNA evidence did show that saliva on the similar transaction victim's panties was her own and not that of Jackson. But this evidence did not prove that Jackson did not commit the acts of which the victim accused him; it proved simply that his saliva was not in her underwear. The victim emphatically testified that Jackson performed oral sex on her, and Jackson admitted in a statement that he took her to his apartment.

We note Jackson's argument that the similar transaction evidence was "tainted," because the victims' mothers knew one another "through appellant, and had actually worked together." First, Jackson's contention that the victim's mother in this case was aware of the accusations made by the similar transaction victim and her mother is nothing more than speculation. Second, both mothers were witnesses in this trial. We agree with the State that the victim's mother's "possible knowledge of the similar transaction may be an issue that could be raised regarding her credibility, but it" did not affect the "admissibility of the similar transaction evidence." Reversal on this ground is not warranted.

4. Jackson argues that the trial court erroneously instructed the jury on the law related to enticing a child for indecent purposes, because the court did not include a definition of child molestation in the charge.

Jackson did not submit a written request to give a child molestation charge. And generally, "[a]bsent a written request, it is not error for the trial court to fail to give an instruction." (Citations and footnote omitted.) *Colbert v. State*, 263 Ga. App. 193, 194 (2) (587 SE2d 300) (2003). Of course, however, the failure to give an unrequested charge "is reversible error when the omission is clearly harmful and erroneous as a matter of law in that the charge as given fails to provide the jury with the proper guidelines for determining guilt or innocence." (Citations and punctuation omitted.) *Kennedy v. State*, 277 Ga. 588, 591 (3) (592 SE2d 830) (2004).

The court instructed the jury that Jackson was charged with the offense of enticing a child for indecent purposes in that he took the victim to a place "for the purpose of child molestation." The court further gave the following charge: "A person commits the offense of enticing a child for indecent purposes when he solicits, entices, or takes any child under the age of 16 to any place whatsoever for the purpose of child molestation or indecent acts." The offense of child molestation occurs when a person "does any immoral or indecent act to or in the presence of or with any child under the age of 16 years with the intent to arouse or satisfy the sexual desires of either the child or the person." OCGA § 16-6-4 (a).

It is true that the trial court did not explicitly instruct the jury on the statutory definition of child molestation. But the court did charge the jury on the statutory definition of enticing a child for indecent purposes. Although the two crimes have different elements, a common element of each crime is that the defendant committed an "indecent act" to the victim or in the victim's presence. As argued by the State, this term "required no further definition, particularly when read in the context of the charge as a whole. It is a term that would be . . . within the knowledge of the average person." See *Howell v. State*, 172 Ga. App. 805, 806 (2) (324 SE2d 754) (1984) (physical precedent only).[1] Under the circumstances of this case, we cannot conclude that the trial court's failure to charge the statutory definition of child molestation in the absence of a request was "clearly harmful and erroneous as a matter of law." (Citations and punctuation omitted.) *Kennedy*, supra, 277 Ga. at 591 (3).

5. Jackson contends in general arguments that he was denied effective assistance of counsel. Under the standard of *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984), to prevail on this claim, he must show that his counsel was deficient and

---

[1] We note that the author of the special concurrence in *Howell* appears to agree with the majority's finding that persons of common intelligence understand the meaning of the term "indecent acts" committed upon a child. See id. at 808.

that he was prejudiced by this deficiency. *Brown v. State*, 278 Ga. 724, 731 (9) (609 SE2d 312) (2004). A strong presumption exists that counsel's actions fell within the wide range of sound trial strategy. Id. We have carefully examined Jackson's ineffectiveness claims, and he has failed to raise any argument rebutting this presumption or otherwise showing that his trial counsel was deficient. The trial court did not err in concluding that Jackson received effective assistance of counsel.

*Judgment affirmed in part and reversed in part. Ellington and Adams, JJ., concur.*

DECIDED JUNE 24, 2005.

Melvin D. Jackson, *pro se*.

*Daniel J. Craig, District Attorney, Charles R. Sheppard, Madonna M. Little, Assistant District Attorneys*, for appellee.