## A06A2392. GONZALEZ v. THE STATE.
### (643 SE2d 8)

ANDREWS, Presiding Judge.

Jessica Gonzalez, convicted by a jury of trafficking in methamphetamine[1] and other charges,[2] appeals the denial of her motion for new trial, alleging that her custodial statements to police were improperly allowed into evidence and that her trial counsel rendered ineffective assistance.

1. On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict, and the defendant no longer enjoys the presumption of innocence. *Short v. State*, 234 Ga. App. 633, 634 (1) (507 SE2d 514) (1998). We do not weigh the evidence or determine witness credibility, but determine only if the evidence was sufficient for a rational trier of fact to find the defendant guilty of the charged offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

So viewed, the evidence here was that Gonzalez had moved to the Atlanta area from California with her boyfriend, Antonio Lopez,[3] when she was 17 and Lopez was in his 30s. Gonzalez was aware that Lopez had been dealing drugs, including methamphetamine (hereinafter "meth"), in California. She thereafter had a son by Lopez, who was two years old at the time of the trial in 2004.

Michael Hines had dealt drugs in Chattooga County for a year or two prior to 2003. His original supplier was a Hispanic male in Atlanta, but Hines had quit dealing with this man by late March or early April 2003. Around that time, three men, including Lopez, and a woman later identified as Gonzalez, came to Hines' home. According to Hines, he and Lopez, who spoke some English, went upstairs and talked and Gonzalez remained downstairs. Hines and Lopez

---

[1] OCGA § 16-13-31 (e).

[2] Her convictions on Count 2, possession of methamphetamine with intent to distribute, and Count 5, possession of methamphetamine, were merged into Count 1, the trafficking conviction. Her sentences on Count 4, use of a communication facility to facilitate a violation of the Georgia Controlled Substances Act (four years), and Count 6, driving without a license (twelve months), were made concurrent to her sentence on Count 1. A verdict was directed on Count 3, conspiracy to traffic in methamphetamine.

[3] Antonio Lopez was the name he gave police, but Gonzalez knew him as Antonio Sanchez. He will be referred to as Lopez here.

discussed prices for meth and, before Lopez left, he gave Hines a phone number to call if he needed anything.

Not long after this visit, Chattooga County Investigators Mark Schrader and Eddie Stroup visited Hines in response to reports that he was cooking meth in his home. Hines consented to a search of his home and the officers found red phosphorus, an ingredient used in the manufacture of meth, and a small amount of meth. As a result, Hines agreed to cooperate with the officers and serve as an informant. Hines told the officers about his recent visit from Lopez, Gonzalez, and the others. As a result, a series of phone calls was initiated, using mainly Schrader's cell phone, and recordings were made of these conversations. Because Hines could not understand Lopez's English over the phone, Gonzalez served as the translator. During these calls, arrangements were made to bring a quantity of meth to Chattooga County. All of these calls occurred between Hines and Gonzalez, and Hines could hear Gonzalez speaking to Lopez in Spanish during the discussions.

Pursuant to these conversations, a delivery was arranged for June 6, 2003. Investigators Schrader, Stroup, Eddie Colbert, and narcotics agent Jackie Womack took up positions in Hines' home to watch the delivery. Around 5:25 p.m., Schrader saw a blue Toyota Corolla driven by a Hispanic male drive slowly up the road in front of Hines' home, turn around, and drive slowly back by. The Corolla then went back up the hill and stopped briefly by the passenger side of a red Lincoln Navigator. The Corolla then turned around and drove into Hines' driveway. Then, a man later identified as Victor Luviano got out of the Corolla, rang the doorbell, and asked the man who answered the door if he were Hines. Upon receiving an affirmative answer, Luviano returned to the Corolla, removed a bag from the car, and delivered it to Hines. Luviano was then arrested and the red Navigator immediately left the area. The bag contained a total of 622.88 grams of a substance. The Georgia Bureau of Investigation lab tested 402.20 grams of it and found it contained meth.

Hearing the lookout, Lieutenant Buchanan of the Chattooga County Sheriff's Department stopped the red Navigator and found Gonzalez driving, Lopez in the front passenger seat, and two children in the back seat.[4] Upon being asked for a driver's license, Gonzalez admitted she did not have one. She and Lopez were then placed under arrest.

Shortly after her arrest, Gonzalez was interviewed by Schrader and Womack, with Sergeant Lisa Davenport present. The interview

---

[4] One was the child of Lopez and Gonzalez and the other was Gonzalez's eleven-year-old brother.

began at 7:36 p.m. and occurred at the Chattooga County Sheriff's Office. Gonzalez was read her *Miranda* rights and she initialed each right and signed the waiver of her rights.

During this interview, Schrader told Gonzalez that the officers had her telephone conversations on tape. Thereafter, the following pertinent colloquy occurred:

> [P. O. Schrader]: . . . We basically wanted — want to talk to you about this. [P. O. Womack] is gonna ask you some questions about it okay?
>
> [Gonzalez]: *If I talk to a lawyer uh when is he gonna be present?*
>
> [P. O. Schrader]: At anytime that you want to talk to a lawyer.
>
> [Gonzalez]: *So I can talk to him right now?*
>
> [P. O. Schrader]: Yes.
>
> [Gonzalez]: *But I don't know.*
>
> [P. O. Womack]: If you want to speak to an attorney then we'll stop talking to you.
>
> [P. O. Schrader]: Until you talk to one.
>
> \* \* \*
>
> [P. O. Schrader]: That's totally your choice.
>
> [Gonzalez]: *I may need some advice.*
>
> [P. O. Womack]: Okay so if you want to talk.
>
> [Gonzalez]: I don't want to be here either.
>
> [P. O. Womack]: Well that's a decision you'll have to make on your own. We can't give you any advice.
>
> [P. O. Schrader]: If you think you need an attorney we'll be happy to stop until you talk with an attorney.
>
> [Gonzalez]: *When do I get to call an attorney?*
>
> [P. O. Schrader]: You'll get to call an attorney of yours or anything.
>
> [Gonzalez]: *Don't know no attorney.*
>
> [P. O. Schrader]: The court will appoint you an attorney. But uh that's not gonna happen today. It's a big decision to make. But it's your choice you know.
>
> [Gonzalez]: *Okay. Well I just want to do whatever is right.*
>
> [P. O. Womack]: Well whatever you feel is right, is what's right for you.
>
> [P. O. Schrader]: We're not going to pressure you one way or another.
>
> [Gonzalez]: *Oh no[,] I know.*
>
> [P. O. Schrader]: If you'd rather talk with an attorney . . .
>
> [P. O. Womack]: Do you want to proceed and talk to us so we can figure out what's going on[?]

> [Gonzalez]: *Yea but it looks like it's all my fault.*
> [P. O. Womack]: Well[,] that's what we want to clear up. That's why we want to talk to you. Because you're right, it don't look good. Your [sic] the one that made all the phone calls.
> [Gonzalez]: *Yea. But . . .*
> [P. O. Schrader]: And I realize probably some of that is because of your ability to speak English. But uh . . .
> [Gonzalez]: *I know but that doesn't matter.*
> [P. O. Schrader]: That's totally your choice, . . . we don't want you to do nothing that you don't want to do. You make the decision. Uh[,] like I said at anytime you can decide to stop and talk with an attorney.
> [Gonzalez]: *Ask me questions.*

(Emphasis supplied.)

Gonzalez then acknowledged that she participated in the phone calls and had her suspicions about what was going on, although she claimed she did not know that meth was actually being delivered on that day. In another interview on June 10, 2003, Gonzalez was again advised of her *Miranda* rights and again signed a waiver. Again, she acknowledged her part in the phone calls and that she and Lopez, in the red Navigator, led Luviano in another car to Hines' neighborhood and directed him to the house.

The evidence was legally sufficient. *Waters v. State*, 280 Ga. App. 566 (634 SE2d 508) (2006).

2. In her first enumeration of error, Gonzalez contends that the admission of her two in-custody statements was error because they were made after she requested an attorney and were not voluntary.

(a) We consider first the issue of voluntariness to the extent that Gonzalez's argument is based on Investigator Schrader's request of the court between the two interviews that Gonzalez's bond be lowered. This argument applies only to the admissibility of the second interview.

> [I]n ruling on the admissibility of an in-custody statement, a trial court must determine whether, based upon the totality of the circumstances, a preponderance of the evidence demonstrates that the statement was made freely and voluntarily. Unless clearly erroneous, a trial court's findings as to factual determinations and credibility relating to the admissibility of the defendant's statement at a *Jackson v. Denno* hearing will be upheld on appeal.

(Citation and punctuation omitted.) *Jackson v. State*, 274 Ga. App. 26, 28 (2) (619 SE2d 294) (2005).

Gonzalez argues that Schrader's actions in requesting the court to lower her bond amounted to the slightest hope of benefit. We disagree. "To make a confession admissible, it must have been made voluntarily, without being induced by another by the slightest hope of benefit or remotest fear of injury." OCGA § 24-3-50. The Supreme Court of Georgia has construed "slightest hope of benefit" to mean the hope of a lighter sentence. See *Caffo v. State*, 247 Ga. 751, 757 (3) (279 SE2d 678) (1981); see also *High v. State*, 271 Ga. App. 388, 390 (2) (609 SE2d 722) (2005).

Here, the hope of benefit was not a reduced sentence but a lowered bond. A mere promise to reduce bond does not constitute a "hope of benefit" under OCGA § 24-3-50. See *Pasuer v. State*, 271 Ga. App. 259, 261-262 (1) (609 SE2d 193) (2005). Instead, such promise, which does not implicate the sentence or charge at issue, is "a collateral benefit that does not make an otherwise admissible confession involuntary." Id.; see also *Sparks v. State*, 232 Ga. App. 179, 184 (4) (501 SE2d 562) (1998) (" 'The promise of a benefit that will render a confession involuntary under OCGA § 24-3-50 must relate to the charge or sentence facing the suspect.' "); OCGA § 24-3-51 ("The fact that a confession has been made under a spiritual exhortation, a promise of secrecy, or a promise of collateral benefit shall not exclude it.").

Therefore, there is no merit to this argument.[5]

(b) Gonzalez's argument that, during the first interview, she requested an attorney, but her request was denied, is also without merit.

A suspect who asks for a lawyer at any time during a custodial interrogation may not be subjected to further questioning by law enforcement until an attorney has been made available or until the suspect reinitiates the conversation. If the police persist in questioning a suspect who has requested that counsel be present, any resulting statements made by the suspect are inadmissible in the State's case-in-chief. In *Davis v. United States*, 512 U. S. 452 (114 SC 2350, 129 LE2d 362) (1994), the United States Supreme Court stated that a suspect "must articulate desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney." Id. at 459. The Supreme Court found that the suspect's statement, "Maybe I should talk to a lawyer," was ambiguous and therefore not a clear

---

[5] Gonzalez's reliance on *Green v. State,* 154 Ga. App. 295 (267 SE2d 898) (1980) is misplaced, as explained in *State v. Johnson*, 273 Ga. App. 324, 326 (615 SE2d 163) (2005).

request for counsel that required the cessation of questioning. Our Supreme Court reached the same result in *Jordan v. State*, 267 Ga. 442, 443 (1) (480 SE2d 18) (1997), where the suspect said he "might need a lawyer" and the police continued to interrogate him. This reference to a lawyer was also found ambiguous and the suspect's ensuing statement was therefore admissible. Compare *Taylor v. State*, 274 Ga. 269 (553 SE2d 598) (2001). In *Carroll v. State*, 275 Ga. 160 (563 SE2d 125) (2002), when the suspect was given the *Miranda* waiver of counsel form, he inquired as to "how" he would get an attorney. This also was held not to be an unambiguous request for counsel and the statement was admitted. See also *Roebuck v. State*, 276 Ga. 136, 138 (1) (575 SE2d 895) (2003) ("probably should wait on [my] attorney" not unambiguous request); *Wright v. State*, 279 Ga. App. 155, 156 (1) (630 SE2d 656) (2006) ("If I ask for an attorney[,] will I be arrested?" not unambiguous request).

That Gonzalez made a number of ambiguous statements and inquiries does not change our analysis. The trial court did not err in allowing her statements into evidence.

3. Gonzalez's remaining three enumerations of error all address claimed ineffective assistance of counsel and are addressed together.

To establish ineffective assistance of counsel, Gonzalez must show that her counsel's performance was deficient and that the deficient performance prejudiced her defense. *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984); *Gross v. State*, 262 Ga. 232, 233-234 (1) (416 SE2d 284) (1992). "[T]he test is whether there is a reasonable probability the jury would have reached a different verdict, absent the error of counsel." *Gross*, supra. In analyzing a claim of ineffective assistance of counsel, we note at the outset that a trial court's finding that a defendant has not been denied effective assistance of counsel will be affirmed unless clearly erroneous. *Warren v. State*, 197 Ga. App. 23, 24 (1) (397 SE2d 484) (1990). Further, Gonzalez must overcome the strong presumption that defense counsel's conduct falls within the broad range of reasonable professional conduct. *Snyder v. State*, 201 Ga. App. 66, 70 (8) (d) (410 SE2d 173) (1991).

(a) Gonzalez argues that trial counsel's failure to request a jury instruction on the voluntariness of her statements, burden of proof regarding the issue, and the condition precedent to admission of such a statement was ineffective.

Trial counsel testified at the motion for new trial hearing that his failure to request such an instruction was an oversight and not a matter of trial strategy. Pretermitting the issue of whether such an

oversight amounted to ineffectiveness,[6] we conclude that, since Gonzalez testified at the trial consistently with the content of her statements, she has not demonstrated that, absent this error, there was a reasonable probability that the result of the trial would have been different. See *Meadows v. State,* 264 Ga. App. 160, 165 (4) (d) (590 SE2d 173) (2003); *Blocker v. State,* 265 Ga. App. 846, 849 (4) (595 SE2d 654) (2004).

(b) Next, it is argued that trial counsel failed to make "an adequate objection" to the State's questioning of Gonzalez regarding her mother's criminal history.

During cross-examination, Gonzalez was asked where her mother was. She replied "in jail." Trial counsel, as appellate counsel acknowledges, did interject an objection upon the asking of this question. The jury was excused at the request of the State's counsel and a hearing was held on the admissibility of any such testimony. Following that hearing, counsel for the State withdrew the issue and it was not mentioned further.

Trial counsel testified that he did not intend to waive any objection to the testimony and we find that he did not. Further, the argument made here that trial counsel failed to renew his objection "when that testimony was subsequently introduced" is not supported by any citation to the record indicating where the testimony was introduced before the jury. This is most likely because it was not subsequently introduced before the jury and we caution appellate counsel to exercise more care in crafting his arguments.

(c) In her final allegation of ineffective assistance, Gonzalez asserts that trial counsel failed to object to improper bolstering testimony from Schrader.

Although here appellate counsel cites to pages 159 to 240, which is Schrader's entire testimony, the only portion of his testimony put forth at the motion for new trial hearing on this issue was one question on page 217 of the transcript, and that is all we consider. See *Tollette v. State,* 280 Ga. 100, 105-106 (11) (621 SE2d 742) (2005); *Earnest v. State,* 262 Ga. 494, 495 (1) (422 SE2d 188) (1992) ("Errors not raised in the trial court will not be heard on appeal.") (citation omitted).

The question and response claimed as bolstering were:

Q[.] Based upon your conversations with Jessica [Gonzalez], did you find any inconsistencies in what she was telling you and what you knew to be the truth in your investigation?

---

[6] Gonzalez concedes that, absent such a request for instruction, there is no necessity to give such a charge. See *Blocker v. State,* 265 Ga. App. 846, 849 (3) (595 SE2d 654) (2004).

A[.] A few inconsistencies I found *between her statements*.

(Emphasis supplied.) Schrader then set out what he identified as these inconsistencies.

No objection was made by trial counsel, who testified at the motion for new trial hearing that "[i]t is objectionable. It is improper to ask that question and have a person comment as far as inconsistencies. I just missed it."

This is not a situation where a detective repeated out-of-court statements of other witnesses who had already testified and compared them to the defendant's statements, as in *Baugh v. State*, 276 Ga. 736, 738 (2) (585 SE2d 616) (2003). There, it was found that this was an improper use of a prior consistent statement because the witnesses' credibility had not been attacked.

We do not believe that this testimony, based on the two custodial statements of Gonzalez which had been introduced into evidence, constituted improper bolstering or comment on Gonzalez's veracity. See *Glidewell v. State*, 279 Ga. App. 114, 127-128 (7) (k) (630 SE2d 621) (2006) (Testimony by detective that witness' pretrial statement to him was consistent with his trial testimony was not a comment on witness' veracity.). Compare *Hines v. State*, 277 Ga. App. 404, 407-408 (2) (626 SE2d 601) (2006) (comment by a detective on defendant's silence in the face of questioning, while improper, found harmless).

Therefore, this claim of ineffectiveness also fails.

*Judgment affirmed. Barnes, C. J., and Bernes, J., concur.*

DECIDED MARCH 1, 2007.

*Garland, Samuel & Loeb, William C. Lea,* for appellant.
*Herbert E. Franklin, Jr., District Attorney, Bruce E. Roberts, Assistant District Attorney,* for appellee.

