A07A1184. HERBERMAN v. THE STATE.
A07A1185. ANDRADA v. THE STATE.
(653 SE2d 74)

MIKELL, Judge.

Vena Herberman and Jorge Manuel Andrada were jointly indicted, tried and convicted of trafficking in methamphetamine and possession of tools for the commission of a crime. The trial court sentenced Herberman to fifteen years, ten to serve and five on probation, and sentenced Andrada to twenty years, ten to serve and ten on probation. Both defendants appeal the trial court's denial of their motions for new trial. As the cases involve the same set of facts, we have consolidated them for disposition. In Case No. A07A1184, Herberman contends that the evidence was insufficient to support her conviction, and in Case No. A07A1185, Andrada argues that the trial court erred in allowing Herberman to testify as a witness for the state. For the reasons set forth below, we affirm.

> On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict, and the defendant no longer enjoys the presumption of innocence. We do not

---

weigh the evidence or determine witness credibility, but determine only if the evidence was sufficient for a rational trier of fact to find the defendant guilty of the charged offense beyond a reasonable doubt.[1]

So viewed, the evidence shows that on October 4, 2005, Joseph Smigel went with Charles Edmondson to an apartment to purchase methamphetamine. Andrada gave Edmondson an "eightball" in a plastic sandwich "baggie" and told him to bring back $150. Smigel testified that Herberman "had nothing to do with [the transaction,]" but sat on the couch watching television while the deal took place in the kitchen. Smigel was later arrested for possession of methamphetamine and agreed to cooperate with officers.

Sometime after midnight on October 5, 2005, Smigel took Bartow County narcotics investigator Mark Mayton to the apartment where he had earlier observed the drug transaction. Ms. Christina Pugh, a tenant of the apartment, answered the door and consented to a search. Pugh, Andrada, Herberman, and Herberman's 14-year-old son were in the apartment. Mayton observed Andrada walk very quickly from the back to the front of the apartment. When officers entered the apartment, Andrada was standing near an entertainment center and Herberman was sitting on the floor at the end of a sofa, near a coffee table. Officers found two sets of digital scales, one in the kitchen and the other in the living room; a Crown Royal bag containing two glass smoking devices in the sole bedroom; a piece of plastic with suspected marijuana stems on it; a glass smoking device and brown substance in a plastic baggie beneath the sofa in the living room; and a brown substance in a clear plastic baggie behind the entertainment center, similar to the substance found beneath the sofa. The substance in the baggies was analyzed at the Georgia Bureau of Investigation crime laboratory, where it was confirmed to be methamphetamine, weighing 83.49 grams.

Mayton testified that Herberman was cooperative and told him that the drugs and drug paraphernalia belonged to Andrada, who obtained them from Texas. Herberman admitted to using methamphetamine and told Mayton that she got it from Andrada. Mayton arrested Andrada and Herberman. On cross-examination, Mayton testified that he did not find any evidence that Herberman was in actual physical control of any items found in the apartment.

Herberman testified on behalf of the state that she and Andrada were boyfriend and girlfriend; that they lived in Texas for a short time before returning to Georgia; that they had been living in Pugh's

---

[1] (Citations omitted.) *Gonzalez v. State*, 283 Ga. App. 843 (1) (643 SE2d 8) (2007).

apartment for approximately one month; that Pugh and her son were living together as boyfriend and girlfriend; that she had used methamphetamine off and on for seven years; that she was present when officers found the baggies in Pugh's apartment; that she had seen the drugs before because she and Andrada had smoked some of it earlier in the day they were arrested; that the drugs and drug paraphernalia belonged to Andrada; that she did not know where Andrada kept the contraband found by the officers, but that she had seen "those particular drugs" and the scales at their apartment in Texas; that she was sitting on the couch playing an electronic video game when Smigel and Edmondson came to the apartment; that she did not pay attention to what they were doing; that Andrada was frantically running around the apartment when officers arrived; that the marijuana pipes found in the Crown Royal bag in the bedroom belonged to her; and that neither Pugh nor Herberman's son knew anything about the drugs. Herberman further testified that she worked four days a week, earning approximately $50 per day; that she spent approximately $35-$50 a day on groceries and $10 per week on gas; that she used methamphetamine on a daily basis, whenever Andrada had it; and that she used approximately one gram, which cost around $100. Herberman denied selling methamphetamine to support her drug habit.

## Case No. A07A1184

1. In her sole enumeration of error, Herberman argues that the evidence demonstrated only her spatial proximity to the contraband, which was insufficient to sustain a conviction for constructive possession of methamphetamine with intent to distribute. We disagree.

In order to prove the crime of trafficking in methamphetamine under OCGA § 16-13-31 (e), the state must show that the defendant knowingly sold, delivered, or possessed 28 grams or more of the drug. "Possession of contraband may be joint or exclusive, and actual or constructive."[2] "A person who knowingly has direct physical control over a thing at a given time is in actual possession of it. A person who, though not in actual possession, knowingly has both the power and the intention at a given time to exercise dominion or control over a thing is then in constructive possession of it."[3] "Spatial proximity alone is insufficient to prove joint constructive possession of contraband. Mere presence, without proof of participation, is insufficient to

---

[2] (Citation omitted.) *Wilson v. State*, 231 Ga. App. 525, 526 (1) (499 SE2d 911) (1998).

[3] (Citation, punctuation and footnote omitted.) *Fraser v. State*, 283 Ga. App. 477, 479 (1) (642 SE2d 129) (2007). See also *Stevens v. State*, 245 Ga. App. 237, 238 (1) (537 SE2d 688) (2000).

support a conviction."[4] Moreover, "when [a] constructive possession case is based wholly on circumstantial evidence, the law requires that the proved facts shall not only be consistent with the hypothesis of guilt, but shall exclude every other reasonable hypothesis save that of the guilt of the accused."[5]

In this case, the circumstantial evidence showed a connection between Herberman and the methamphetamine other than spatial proximity. Mayton testified that he found a baggie of methamphetamine under the sofa in the living room and that Herberman was sitting on the floor in front of that sofa when officers first entered the apartment. Herberman further testified that she had been living in the apartment where the drugs were found for approximately one month; that the drugs did not belong to her son or Pugh; that she and Andrada had smoked some of the methamphetamine earlier that day; that she was present in the apartment when Andrada sold Edmondson an "eightball"; that the drugs and drug paraphernalia found by the officers came from an apartment she shared with Andrada in Texas; that she and Andrada used methamphetamine on a daily basis; and that her wages were insufficient to maintain her $100 a day drug habit. This evidence authorized the finding that Herberman was in joint constructive possession of the methamphetamine.

*Stevens v. State*,[6] upon which Herberman relies, is factually inapposite. In that case, we found insufficient evidence to support defendant Stevens's conviction for trafficking in cocaine because there was no evidence connecting her to the cocaine. The defendant was found asleep in a room containing baby items; no drugs were found in the room or on her person; and there was no evidence that she even occupied the premises.[7] Accordingly, Herberman provides no basis for reversal.

Furthermore, although Herberman properly contends that the facts must exclude other reasonable hypotheses, "whether this burden has been met is a question for the jury, and its determination will not be disturbed unless the verdict is insupportable as a matter of law."[8] The circumstantial evidence was sufficient to exclude every reasonable hypothesis save that of guilt and was sufficient for the

---

[4] (Footnote omitted.) *Stevens*, supra.

[5] (Citation and punctuation omitted.) *Hodges v. State*, 277 Ga. App. 174 (626 SE2d 133) (2006).

[6] Supra.

[7] Id. at 238-239 (1).

[8] (Citation and punctuation omitted.) *Washington v. State*, 251 Ga. App. 206, 209 (1) (553 SE2d 855) (2001).

jury to find that Herberman was guilty beyond a reasonable doubt of trafficking in methamphetamine.

### Case No. A07A1185

2. In his sole enumeration of error, Andrada contends that the trial court erred in permitting Herberman — a "non-immunized codefendant" — to testify as a witness for the state in its case-in-chief. Andrada contends that this arrangement bolstered Herberman's testimony at the expense of his constitutional right not to testify. However, OCGA § 17-8-4 provides that

> [w]hen two or more defendants are jointly indicted . . . for a felony less than capital, or for a misdemeanor, such defendants may be tried jointly or separately in the discretion of the trial court. In any event, a jointly indicted defendant may testify for another jointly indicted defendant or on behalf of the state.[9]

Herberman voluntarily testified at trial, and Andrada had the opportunity to cross-examine her or otherwise present evidence demonstrating his innocence. It is pure speculation to assume that Herberman's willingness to cooperate with the state without a promise of leniency or immunity would cause the jury to view her testimony in a positive light. The trial court did not err in permitting the testimony.[10]

*Judgment affirmed. Johnson, P. J., and Phipps, J., concur.*

DECIDED SEPTEMBER 25, 2007.

*David A. Stevens*, for appellant (case no. A07A1184).

---

[9] OCGA § 17-8-4 (a). See generally *Bruton v. United States*, 391 U. S. 123 (88 SC 1620, 20 LE2d 476) (1968) (statement or confession by co-defendant who does not testify at a joint trial, may not be used to implicate other co-defendants).

[10] The issue of a co-defendant testifying against another co-defendant generally arises when a defendant challenges the denial of a motion to sever trials. See, e.g., *Green v. State*, 274 Ga. 686, 688 (2) (558 SE2d 707) (2002) (co-defendants gave testimony that implicated defendant); *Adams v. State*, 271 Ga. 485, 486 (2) (521 SE2d 575) (1999) ("[n]o prejudice amounting to a denial of appellant's due process protection is demonstrated by the circumstance that an accomplice, who is subject to cross-examination, takes the stand and blames the appellant or attributes to him a greater degree of culpability than the accomplice himself bears") (citation omitted); *Cain v. State*, 235 Ga. 128, 130 (218 SE2d 856) (1975) (where statute clearly provides that a jointly tried defendant may testify for the other or on behalf of the state, defendant will not be heard to complain merely because he does not like his co-defendants' testimony); *Belcher v. State*, 207 Ga. App. 117 (1) (427 SE2d 88) (1993) (during course of testifying in her own defense, co-defendant testified that defendant was present at the crime scene).

*Christopher G. Paul*, for appellant (case no. A07A1185).

*T. Joseph Campbell, District Attorney, Gregory S. Dickson, Assistant District Attorney*, for appellee.