## A10A1062. JACKSON v. THE STATE.
## A10A1105. ROYAL v. THE STATE.
### (701 SE2d 481)

MIKELL, Judge.

Marco Deangelo Jackson ("Jackson"), Arthur James Royal, Jr., and Tasha Jackson ("Tasha") were jointly indicted, tried, and convicted of possession of cocaine with intent to distribute[1] (Count 1) and possession with intent to distribute a controlled substance within 1,000 feet of a housing project[2] (Count 2). Royal also was convicted of three misdemeanors: tampering with evidence, possession of less than one ounce of marijuana, and obstruction of an officer. Jackson and Royal[3] appeal from the orders denying their respective motions for

---

[15] *Freese II, Inc. v. Moses*, 301 Ga. App. 793, 795 (689 SE2d 98) (2009).

[1] OCGA § 16-13-30 (b).

[2] OCGA § 16-13-32.5 (b).

[3] Tasha Jackson is not a party to this appeal.

34

new trial, challenging the sufficiency of the evidence to support their felony convictions[4] and the effectiveness of their respective trial attorneys. Because there are facts common to both appeals, we consolidate them for disposition in a single opinion.

1. Jackson and Royal assert that the evidence is insufficient to support their convictions, and Royal also enumerates as error the denial of his motion for a directed verdict of acquittal on Counts 1 and 2. The standard of review is the same for these enumerations of error.[5]

> On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict, and the defendant no longer enjoys the presumption of innocence. We do not weigh the evidence or determine witness credibility, but determine only if the evidence was sufficient for a rational trier of fact to find the defendant guilty of the charged offense beyond a reasonable doubt.[6]

Properly viewed, the evidence adduced at trial shows that at 8:30 a.m. on April 7, 2008, Bainbridge Public Safety Officer Alton Brock, accompanied by five other officers, executed a no-knock search warrant at a two-story, two-bedroom apartment owned and operated by the Bainbridge Housing Authority. The apartment was registered to Tasha, and she and Royal were named on the warrant. Brock testified that when he entered the apartment, Royal was on the living room couch, stuffing a baggie of marijuana into his mouth. Brock and fellow officer Patrick Bryant had to subdue Royal in order to retrieve the baggie. No other drugs or drug paraphernalia were found on Royal or on the first floor of the apartment.

The other officers went upstairs to a bedroom and then summoned Brock and Bryant, both of whom testified that Jackson was on the floor kneeling next to a small piggy bank containing 37 baggies of cocaine. Tasha was in the bed. Jackson was wearing boxer shorts, and clothes were strewn all over the floor. A pair of men's pants containing $441 in small denominations was found near the cocaine, and Jackson's driver's license was found in the same pants. Bryant testified that when he entered the bedroom, Jackson was "fidgeting" with something in a corner of the room. Bryant could not see the object because the bed was in the way. He drew his weapon and ordered Jackson to raise his hands. Bryant then saw that

---

[4] Royal does not challenge his misdemeanor convictions.

[5] *Truitt v. State*, 266 Ga. App. 56 (596 SE2d 219) (2004).

[6] (Footnote omitted.) *Herberman v. State*, 287 Ga. App. 635-636 (653 SE2d 74) (2007); see *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

Jackson was kneeling over the cocaine.

(a) Jackson argues that the evidence shows nothing more than his spatial proximity to the cocaine, which is insufficient to support his convictions of possession with intent to distribute.[7] This argument is meritless.

> Possession of contraband may be joint or exclusive, and actual or constructive. A person who knowingly has direct physical control over a thing at a given time is in actual possession of it. A person who, though not in actual possession, knowingly has both the power and the intention at a given time to exercise dominion or control over a thing is then in constructive possession of it.[8]

Here, the state established by overwhelming circumstantial evidence that Jackson was in either constructive or actual possession of the cocaine. He was found kneeling over the contraband, and the jury was authorized to infer that he had been "fidgeting" with the piggy bank in which 37 small bags of cocaine were hidden. Pants with Jackson's driver's license and $441 in cash, including eleven $20 bills, were found in the same corner of the bedroom as the cocaine. Brock testified that cocaine users often buy the drug in $20 increments. The evidence established beyond any reasonable doubt that Jackson had the power and the intent to exercise control over the cocaine.[9]

(b) Royal contends that his convictions on Counts 1 and 2 cannot be sustained because there is no evidence connecting him to the cocaine. We agree and reverse Royal's conviction on these counts.

"A finding of constructive possession must be based upon some connection between the defendant and the contraband other than spatial proximity."[10] Moreover, "when a constructive possession case is based wholly on circumstantial evidence, the law requires that the proved facts shall not only be consistent with the hypothesis of guilt, but shall exclude every other reasonable hypothesis save that of the

---

[7] See *Stevens v. State*, 245 Ga. App. 237, 238 (1) (537 SE2d 688) (2000) ("Spatial proximity alone is insufficient to prove joint constructive possession of contraband.") (footnote omitted).

[8] (Punctuation and footnotes omitted.) *Herberman*, supra at 637 (1).

[9] See id. at 638 (1) (evidence that defendant was sitting on floor in front of sofa under which methamphetamine was found, among other things, proved joint constructive possession); *Cooper v. State*, 237 Ga. App. 837, 838 (2) (517 SE2d 85) (1999) (defendant's pill bottle in same bag as 19 packages of cocaine, in addition to other evidence, proved joint constructive possession).

[10] (Citation and punctuation omitted.) *Shirley v. State*, 166 Ga. App. 456, 457 (1) (304 SE2d 468) (1983).

guilt of the accused."[11] Here, the circumstantial evidence and the reasonable inferences derived therefrom were insufficient to connect Royal to the cocaine found in an upstairs bedroom occupied by his co-defendants.[12] When the police entered the apartment, Royal was on the couch on the first floor, trying to eat a baggie of marijuana. While this evidence authorizes his conviction of misdemeanor marijuana possession, it does not permit an inference that he possessed the 37 baggies of cocaine that were hidden in a piggy bank in an upstairs bedroom.[13] No other drugs, drug-related paraphernalia, or cash were found on the first floor. Significantly, no evidence was introduced to show that Royal resided in the apartment, which might authorize an inference that he possessed the property therein.[14]

The state argues that Brock's testimony that he conducted an "independent investigation" that gave him "reason to believe" that Royal was selling drugs out of the apartment sufficiently connected Royal to the cocaine. Although this latter testimony implicating Royal was elicited by a co-defendant on cross-examination, it nevertheless constitutes hearsay, which has no probative value. "Hearsay testimony is not only inadmissible but wholly without probative value, and its introduction without objection does not give it any weight or force whatever in establishing a fact."[15] And even if the hearsay had been properly admitted to explain the officer's conduct in obtaining the warrant, "such evidence is admissible as original evidence solely to explain conduct and not as original evidence of guilt."[16] Accordingly, the state's argument fails.

As no probative evidence connected Royal to the cocaine, the circumstantial evidence did not exclude every other reasonable hypothesis save that of his guilt of possessing cocaine with the intent to distribute. Therefore, Royal's conviction on Counts 1 and 2 is unsupportable as a matter of law, and the trial court erred by

---

[11] (Punctuation and footnote omitted.) *Herberman*, supra.

[12] See *Paden v. State*, 216 Ga. App. 188, 190 (1) (453 SE2d 788) (1995).

[13] See, e.g., *Mitchell v. State*, 268 Ga. 592, 593 (492 SE2d 204) (1997) ("A finding of constructive possession of contraband cannot rest upon mere spatial proximity to the contraband, especially where . . . the contraband is hidden.") (citations omitted).

[14] See *In re E. A. D.*, 271 Ga. App. 531, 532-533 (610 SE2d 153) (2005) ("a mere occupant, as distinguished from a resident, does not necessarily have the requisite control over the premises to authorize the inference that he possesses all property found thereon") (citations and footnotes omitted); compare *Whitfield v. State*, 217 Ga. App. 402, 405 (3) (457 SE2d 682) (1995) (lessee, as opposed to social guest, is presumed to be in possession of the entire premises and all property, including contraband, found on the premises).

[15] (Citation and footnote omitted.) *Patterson v. State*, 287 Ga. App. 100, 103 (2) (a) (650 SE2d 770) (2007) (officer's testimony concerning statements made to him by defendant's mother was inadmissible hearsay); accord *Brown v. State*, 294 Ga. App. 1, 5 (2) (668 SE2d 490) (2008) (officer's testimony concerning informant's statements held hearsay, requiring reversal of probation revocation).

[16] (Citations omitted.) *Brown v. State*, 274 Ga. 31, 37 (2) (549 SE2d 107) (2001).

denying his motion for a directed verdict of acquittal.[17] Moreover, in light of our reversal on this ground, we need not consider Royal's remaining enumerations of error.

2. Jackson asserts that his trial counsel was ineffective in three respects: (a) failing to challenge comments on his post-arrest silence, (b) failing to challenge hearsay testimony, and (c) failing to present a reasonable defense.

> To prevail on a claim of ineffective assistance of counsel, a defendant must show that counsel's performance was deficient and that the deficient performance so prejudiced the defendant that there is a reasonable likelihood that, but for counsel's errors, the outcome of the trial would have been different. . . . *Strickland v. Washington*[.][18] If an appellant fails to meet his or her burden of proving either prong of the *Strickland* test, the reviewing court does not have to examine the other prong. In reviewing the trial court's decision, we accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts.[19]

Moreover, "there is a strong presumption that the performance of counsel was within the wide range of reasonable professional lawyering, and we cannot reach a contrary conclusion unless defendant successfully rebuts the presumption by clear and convincing evidence."[20] Finally, "[w]e will not reverse on the basis of ineffective assistance of counsel unless trial counsel's conduct so undermined the proper functioning of the adversarial process that the trial court could not reliably have produced a just result."[21] Applying these standards, and considering the overwhelming circumstantial evidence of Jackson's guilt, we conclude that the trial court did not err in denying his motion for new trial on the basis of ineffective assistance of counsel.[22]

(a) *Failing to challenge comments on Jackson's post-arrest silence.* When Brock was asked what happened to the defendants after they were arrested, he testified that they were given the chance to be

---

[17] See *Morrison v. State*, 220 Ga. App. 151, 153-154 (1) (a) (469 SE2d 686) (1996).

[18] 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984).

[19] (Citations and punctuation omitted.) *Bridges v. State*, 286 Ga. 535, 537 (1) (690 SE2d 136) (2010).

[20] Id., citing *Flanigan v. State*, 269 Ga. 160, 162 (2) (d) (496 SE2d 255) (1998).

[21] (Citation omitted.) *Powell v. State*, 272 Ga. App. 628, 630 (2) (612 SE2d 916) (2005).

[22] See *Bridges*, supra at 537-538 (1); accord *Venegas v. State*, 285 Ga. App. 768, 770 (1) (647 SE2d 422) (2007).

interviewed and that Tasha elected to be interviewed. The prosecutor stopped Brock from testifying as to the contents of any interview, but asked what Brock did. Brock replied that he "attempted to interview." Jackson contends that his trial counsel should have objected to this impermissible comment on his post-arrest silence. Counsel testified at the new trial hearing that he might have objected to this testimony had the officer gone into more detail. This decision not to object to the officer's passing reference to Jackson's post-arrest silence was a valid exercise of reasonable professional judgment.[23] Moreover, given the overwhelming evidence of Jackson's guilt, there is no reasonable probability that, but for counsel's failure to object, the outcome of the trial would have been different.[24] Accordingly, Jackson has failed to satisfy either prong of the *Strickland* test with regard to this assertion.

(b) *Failing to challenge hearsay testimony.* Brock testified that he obtained a search warrant after receiving information from a "previously reliable informant . . . that there [were] two black males selling. . . ." Royal's counsel interposed a hearsay objection, which the trial court sustained. Jackson's counsel subsequently cross-examined Brock at length concerning the process he followed in obtaining the warrant, culminating in Brock's testimony that the apartment was registered to Tasha; that only Tasha and Royal were named on the warrant; and that Jackson's name was not on the warrant. In opening and closing, Jackson's counsel emphasized that the investigation conducted by the police failed to yield Jackson as a suspect in the drug dealing, and he placed the blame on the other co-defendants.

At the new trial hearing, Jackson's counsel was asked why he did not object to the reference to "two black males." Although counsel offered no explanation, we note that Royal's objection, which was sustained, would have rendered any further objection by Jackson superfluous. Jackson argues that trial counsel should have requested an instruction from the trial court to disregard the comment. We conclude, however, that Jackson has failed to rebut the presumption that trial counsel performed within the wide range of reasonable professional assistance in this regard. Requesting a curative instruction, after a successful objection by co-counsel, may have called more attention to the remark.[25] Moreover, a remark implicating two African-Americans fit in with Jackson's trial strategy to implicate his *two* co-defendants, and "matters of reasonable strategy and tactics

---

[23] See *Wright v. State*, 276 Ga. 419, 422 (5) (d) (577 SE2d 782) (2003).

[24] *Morris v. State*, 280 Ga. 184, 185-186 (2) (b) (625 SE2d 391) (2006).

[25] See *Ballard v. State*, 268 Ga. App. 55, 60 (5) (c) (601 SE2d 434) (2004).

do not amount to ineffective assistance of counsel."[26] Although Brock referred to "two black *males*," Jackson's counsel repeatedly argued, in opening and closing, that "two people" were named in the warrant; that those "two people" were "brother and sister"; and that the two persons named in the warrant were the drug dealers.

(c) *Failing to present a reasonable defense.* "[G]enerally, counsel's decision as to which theory of defense to pursue is considered strategic and cannot serve as the basis for an ineffective assistance claim."[27] We do not find trial counsel's defense strategy of implicating Jackson's co-defendants unreasonable. Jackson argues, however, that his trial counsel failed to present evidence as promised in his opening statement. In that statement, Jackson told the jury that the evidence would show that Jackson was with his girlfriend in the apartment next door on the night before the search but had a fight with her and went to Tasha's apartment as a result. Jackson's counsel testified at the new trial hearing that he did not call the girlfriend as a witness because she was "very hostile" and "would not have been the best witness for us." "Decisions regarding which defense witnesses to call are matters of trial strategy and tactics, and tactical errors do not constitute ineffective assistance of counsel."[28] Moreover, Jackson's mother testified that on the date in question, he was dating his girlfriend, who had an apartment in the same complex as Tasha. Thus, the jury heard at least a portion of the promised evidence. In any event, "the opening statement and closing argument are not to be considered as evidence by the jury."[29] Thus, Jackson cannot show that there is a reasonable probability that the outcome of the trial would have been different had counsel opened differently.[30] It follows that the trial court did not err in rejecting Jackson's ineffective assistance of counsel claim.

*Judgment affirmed in Case No. A10A1062. Judgment reversed in Case No. A10A1105. Smith, P. J., and Adams, J., concur.*

DECIDED AUGUST 3, 2010 —
RECONSIDERATION DENIED SEPTEMBER 13, 2010.

*Jimmonique R. S. Rodgers*, for appellant (case no. A10A1062).
*John G. Wolinski*, for appellant (case no. A10A1105).

---

[26] (Citation and punctuation omitted.) *Mealor v. State*, 266 Ga. App. 274, 278 (b) (596 SE2d 632) (2004).

[27] (Footnote omitted.) *McGhee v. State*, 263 Ga. App. 762, 764 (2) (589 SE2d 333) (2003).

[28] (Citations and punctuation omitted.) *Payne v. State*, 273 Ga. App. 483, 485 (2) (615 SE2d 564) (2005).

[29] (Citation omitted.) *Muller v. State*, 284 Ga. 70, 73 (3) (663 SE2d 206) (2008).

[30] Id., citing *Hazelrigs v. State*, 255 Ga. App. 784, 785-786 (1) (567 SE2d 79) (2002).

*Joseph K. Mulholland, District Attorney, Michael L. Bankston, Michael T. Garrett, Assistant District Attorneys*, for appellee.